# UNITED STATES DISTRICT COURT

## EASTERN DISTRICT OF CALIFORNIA

| | | |
|---|---|---|
| RUDY B. DUARTE, | ) | 1:06cv1252 AWI DLB |
| | ) | |
| | ) | |
| Plaintiff, | ) | FINDINGS AND RECOMMENDATION |
| | ) | REGARDING PLAINTIFF'S |
| v. | ) | SOCIAL SECURITY COMPLAINT |
| | ) | |
| MICHAEL J. ASTRUE, Commissioner | ) | |
| of Social Security, | ) | |
| | ) | |
| | ) | |
| Defendant. | ) | |
| | ) | |

## BACKGROUND

Plaintiff Rudy B. Duarte ("Plaintiff") seeks judicial review of a final decision of the Commissioner of Social Security ("Commissioner") denying his application for disability insurance benefits pursuant to Title II of the Social Security Act. The matter is currently before the Court on the parties' briefs, which were submitted, without oral argument, to the Magistrate Judge for findings and recommendation to the District Court.[1]

---

[1] Due to the recent appointment of Judge Lawrence J. O'Neill to the position of United States District Judge, this case was reassigned to the Honorable Dennis L. Beck on September 27, 2007.

## FACTS AND PRIOR PROCEEDINGS[2]

Plaintiff filed his application on December 2, 2004, alleging disability since December 1, 2003, due to "pancreitis, espophogus, double hernia and nerve damage." AR 67-69, 79-85. After being denied both initially and upon reconsideration, Plaintiff requested a hearing before an Administrative Law Judge ("ALJ"). AR 34-38, 41-45, 46. On December 30, 2005, ALJ Stephen Webster held a hearing. AR 179-207. ALJ Webster denied benefits on February 15, 2006. AR 9-18. On August 10, 2006, the Appeals Council denied review. AR 4-17.

Hearing Testimony

ALJ Webster held a hearing on December 30, 2005, in Fresno, California. Plaintiff appeared with his attorney, Robert Ishikawa. Vocational expert ("VE") Cheryl Chandler also appeared and testified. AR 179.

Plaintiff testified that he was born in 1949, and is married with two children. AR 183. He left school in the eleventh grade. AR 186. He admitted that he cheated on his GED while he was in prison because he could not read. AR 187.

Plaintiff has a driver's license but does not drive everyday or for long distances because of cramps in his right groin area. AR 184. His wife helps him put his socks on in the morning because he can't bend over, but once he walks around and loosens up, he functions "okay." His wife tells him that he's in charge of the "outside," and he cuts the grass with the help of his son. AR 185. He watches about two hours of television in the afternoon and visits friends every once in a while. AR 186. He goes to church once in a while, but he can't sit for too long. AR 186.

Plaintiff has worked as a painter since he was about 20. He had not worked since December 1, 2003, but guys "loan[ed]" him money for "tinkering around on their bikes and stuff like that" for about five weeks. AR 187.

Plaintiff testified that he has problems with both shoulders and bilateral hernias. He also has pancreatitis. AR 189. He has constant pain in his groin and shoulders. Vicodin does not help. AR 189. He thought he could sit for about an hour and stand for about two hours. AR

---

[2] References to the Administrative Record will be designated as "AR," followed by the appropriate page number.

1   190.  He can walk for about 40 minutes.  He could lift 50 pounds once or twice.  He cannot reach

2   overhead.  AR 191.

3           When questioned by his attorney, Plaintiff explained that he had post-hernia surgery in

4   December 2003 and that it was not successful because they placed staples into his nerves.  He

5   had another surgery in January 2004 and another in April 2004.  AR 192.  His last surgery was in

6   November 2004 when they "cleaned everything out," including nerves.  AR 193.  Plaintiff

7   testified that his thigh is always numb and is one reason he can't sit for too long.  If he lifts and

8   carries 50 pounds once, his groin throbs for the rest of the day.  AR 194.  He thought he could lift

9   about 25 pounds frequently.  AR 195.  He cannot reach with his arms on a constant basis.  His

10  left arm is worse than the right.  AR 195.  He has problems getting back up after he bends down

11  because of his back.  AR 196.  He thought he could alternate between sitting and standing for

12  about six hours.  AR 197.  When he's in pain, he gets up and walks around.  AR 197-198.

13          The VE testified that Plaintiff's past relevant work as a painter was performed at the

14  heavy level.  AR 199.

15          For the first hypothetical, the ALJ asked the VE to assume a person of Plaintiff's age,

16  education and work history who could lift 50 pounds occasionally and 25 pounds frequently and

17  who could sit, stand or walk for six hours out of an eight hour day.  This person could not

18  perform overhead work with the upper extremities.  AR 200.  This person could not perform

19  Plaintiff's past work but could perform other jobs in the national economy.  Such positions in

20  include work in retail sales, both skilled and unskilled.  The number of positions would be

21  reduced by 50 percent because of Plaintiff's limitation to no overhead work.  AR 202.

22          For the second hypothetical, the ALJ asked the VE to assume the same individual, who

23  could sit, stand and walk for four each out of eight hours.  AR 202.  The VE testified that this

24  would be consistent with a sit/stand option or sit/stand/walk option.  This person could perform

25  assembly work and hand packing tasks.  The numbers would be reduced by 50 percent to allow

26  for the sit/stand option.

27

28

1    Plaintiff's attorney asked the VE to return to the first hypothetical, and to assume that the

2  individual had a difficult time reading.  This would not affect the unskilled sales jobs but would

3  preclude the skilled position, i.e., work in a paint store.

4    Mr. Ishikawa asked the VE a third hypothetical that assumed a person who could lift 25

5  pounds occasionally, 15 to 20 pounds frequently, sit for one hour at a time, stand for one to two

6  hours at a time, and walk for 40 minutes at a time.  This person could sit, stand and walk for six

7  hours total.  AR 204-205.  The VE testified that this would prohibit full-time work.  AR 205.

8    <u>Medical Evidence</u>

9    In October 2003, Plaintiff was examined by Adolfo Alvarez, M.D., for complaints of

10  groin pain and was diagnosed with a hernia.  AR 142.  He received follow-up treatment and

11  eventually underwent surgery on January 12, 2004.  AR 135-139.  After surgery, he continued to

12  complain of groin pain through March.  AR 132-134, 137.

13    Plaintiff saw Dr. Alvarez on March 16, 2004.  Dr. Alvarez indicated that Plaintiff was

14  unable to work through April 4, 2004, but could return to full duty, with no restrictions, on April

15  5, 2004.

16    On August 30, 2004, Plaintiff reported that he was doing better.  AR 131.

17    Plaintiff underwent follow-up surgery to correct persistent nerve pain status post

18  laparoscopic hernia repair on November 15, 2004.  AR 129-130.

19    Dr. Alvarez completed an Attending Physician's Statement of Disability on November

20  21, 2004.  He stated that Plaintiff was recovering from his third surgery for a bilateral inguinal

21  hernia.  He opined that Plaintiff was totally disabled from any occupation.  AR 124-126.

22    On December 2, 2004, Dr. Alvarez noted that Plaintiff "will not be able to return to work.

23  Will apply for permanent disability."  AR 123.

24    On December 8 and 24, 2004, Dr. Alvarez completed an Attending Physician report for

25  insurance purposes.  He indicated that Plaintiff was permanently disabled as of December 2,

26  2004, and could never return to any work.  AR 118, 120-122.

27    On February 14, 2005, Dr. Alvarez completed an Attending Physician's Statement of

28  Disability.  He diagnosed Plaintiff with persistent nerve pain status post laparoscopic hernia

repair.  He last examined Plaintiff on February 4, 2005, and his progress was unimproved.  Dr. Alvarez opined that Plaintiff was totally disabled from any occupation and could never return to work.  AR 116.

_____Plaintiff underwent a consultive examination performed by Tahir Hassan, M.D., on February 20, 2005.  Plaintiff reported numerous surgeries to repair a hernia and that his last surgery was on December 14, 2004.  He has had right groin pain since that surgery and reported that only Vicodin helps the pain.  On examination, no hernia was noted.  There was no tenderness to palpation in the midline or paraspinal area.  Straight leg rasing was negative.  Range of motion testing was within normal limits for upper and lower extremities.  Gait was within normal limits.  AR 143-147.

Dr. Hassan diagnosed a history of hernia repair surgery and right groin pain, possible nerve damage during surgery.  AR 147.  He opined that Plaintiff could lift and carry 50 pounds occasionally and 25 pounds frequently.  He can stand and walk for six hours and did not require an assistive device.  He could sit for six hours.  He could occasionally climb, balance, stoop, kneel, crouch and crawl.  He had no manipulative, visual, communicative or environmental limitations.  AR 147.

On March 8, 2005, State Agency physician George W. Bugg, M.D., completed a Physical Residual Functional Capacity Assessment form.  He opined that Plaintiff could lift and carry 50 pounds occasionally, 25 pounds frequently, stand and/or walk about six hours, and sit for about six hours.  Plaintiff was unlimited in pushing and pulling.  He could occasionally climb, kneel, crouch and crawl, and could frequently balance and stoop.  AR 149-156.  This opinion was affirmed on May 18, 2005.

_____On May 13, 2005, x-rays of Plaintiff's cervical spine revealed degenerative changes.  AR 172.  Shoulder x-rays were normal.  AR 173.

_____On June 29, 2005, Dr. Alvarez wrote a letter indicating that Plaintiff had been experiencing debilitating pain to the right groin since bilateral laparoscopic inguinal hernia repairs on December 1, 2003.  Plaintiff's pain continued despite numerous injections and repeat

1    surgeries.  Dr. Alvarez indicated that Plaintiff could not "resume his usual work and at this time

2    should be strongly considered for permanent disability."  AR 168.

3    _____MRIs of Plaintiff's shoulders performed on August 14, 2005, revealed a full thickness

4    tear of the supraspinatus tendon in both the left and right shoulders.  AR 164-165.

5    An x-ray of Plaintiff's back performed on August 14, 2005, revealed multilevel

6    degenerative disc disease.  AR 167.

7    _____On September 30, 2005, Plaintiff saw Alok Gaur, M.D., for an orthopedic consultation.

8    He complained of bilateral shoulder pain since November 2004, when he fell off a trailer.  His

9    pain persisted despite treatment and injections.  Plaintiff also complained of weakness and rated

10   his pain as a five out of ten.  He could not perform overhead activities or reaching.  On

11   examination, Plaintiff was in some obvious pain while sitting.  He had restriction of movement

12   and was diffusely tender all around the shoulder area.  There were subacromial clicks with

13   subacromial crepitus on both sides with mild weakness of abduction and external rotation.  MRI

14   scans confirmed bilateral supraspinatus tears with acromioclavicular arthropathy.  AR 160.

15   Dr. Gaur diagnosed bilateral rotator cuff tears with subacromial impingement and

16   acromioclavicular arthropathy, and arthrofibrosis of both shoulders.  Dr. Gaur described this as a

17   "tough situation."  He recommended manipulation of both shoulders under anesthesia, with

18   injections to both shoulders, followed by aggressive therapy to achieve reasonably good range of

19   motion.  As a second stage, he recommended that they attempt to repair the left torn rotator cuff

20   along with AC debridement.  AR 161.

21   _____Dr. Alvarez indicated that he spoke with Plaintiff on December 8, 2005.  Plaintiff

22   continued to complain of significant groin pain to the right groin area.  He explained that

23   Plaintiff has a nerve injury status-post hernia repair and despite repeat operations to fix it, his

24   symptoms persist.  It was unlikely that any further surgical intervention would be of use.  Dr.

25   Alvarez agreed with Plaintiff's decision to file for permanent disability.  AR 159.

26   _____Dr. Alvarez wrote another letter on December 28, 2005.  He indicated that Plaintiff could

27   not resume his usual work, explaining that the "episodes of pain are so severe and debilitating

28   that it is not possible for him to work even a limited schedule."  AR 174.  He further stated that

1  Plaintiff's job requires him to lift heavy loads and that this was beyond his capacity.  AR 174.

2  Given his major limitations and inability to correct his problem, he should be considered for

3  permanent disability.  AR 174.

4      Plaintiff submitted a Medical Assessment completed by Dr. Alvarez on February 28,

5  2006, to the Appeals Council.  AR 175-178.  He opined that Plaintiff could lift and carry 20

6  pounds occasionally and 15 pounds frequently due decreased functional ability from nerve

7  entrapment in his groin, bilateral rotator cuff tears, multilevel degenerative disc disease and

8  arthritis in several levels of his back.  He could stand and/or walk for 2-3 hours total due to pain,

9  and could sit for 2-3 hours total.  He could never climb, stoop, kneel, crouch or crawl because

10  any activity that required flexion at the hip or movement of the upper leg causes excruciating

11  pain in the groin area.  He could occasionally balance.  He was limited in reaching, handling,

12  feeling and pushing/pulling.  He could not tolerate vibration because it could irritate the

13  entrapped nerve.  AR 176-178.

14      <u>ALJ's Findings</u>

15      After reviewing the medical evidence, the ALJ found that Plaintiff had the severe

16  impairments of hernia problems, status post repair, probably from nerve damage, and injury to

17  his shoulders.  However, Plaintiff retained the residual functional capacity ("RFC") to lift 50

18  pounds occasionally, 25 pounds frequently, and to sit, stand and walk six hours each out of eight.

19  Plaintiff was precluded from overhead lifting.  Based on the testimony of the VE, the ALJ

20  determined that Plaintiff could perform a significant range of medium work.  AR 17-18.

21      **SCOPE OF REVIEW**

22      Congress has provided a limited scope of judicial review of the Commissioner's decision

23  to deny benefits under the Act.  In reviewing findings of fact with respect to such determinations,

24  the Court must determine whether the decision of the Commissioner is supported by substantial

25  evidence.  42 U.S.C. 405 (g).  Substantial evidence means "more than a mere scintilla,"

26  *Richardson v. Perales*, 402 U.S. 389, 402 (1971), but less than a preponderance.  *Sorenson v.*

27  *Weinberger*, 514 F.2d 1112, 1119, n. 10 (9th Cir. 1975).  It is "such relevant evidence as a

28  reasonable mind might accept as adequate to support a conclusion."  *Richardson*, 402 U.S. at

1    401.  The record as a whole must be considered, weighing both the evidence that supports and

2    the evidence that detracts from the Commissioner's conclusion.  *Jones v. Heckler,* 760 F.2d 993,

3    995 (9th Cir. 1985).  In weighing the evidence and making findings, the Commissioner must

4    apply the proper legal standards.  *E.g.*, *Burkhart v. Bowen*, 856 F.2d 1335, 1338 (9th Cir. 1988).

5    This Court must uphold the Commissioner's determination that the claimant is not disabled if the

6    Secretary applied the proper legal standards, and if the Commissioner's findings are supported by

7    substantial evidence.  *See Sanchez v. Sec'y of Health and Human Serv.*, 812 F.2d 509, 510 (9th

8    Cir. 1987).

9                                              **REVIEW**

10        In order to qualify for benefits, a claimant must establish that he is unable to engage in

11   substantial gainful activity due to a medically determinable physical or mental impairment which

12   has lasted or can be expected to last for a continuous period of not less than 12 months.  42

13   U.S.C. § 1382c (a)(3)(A).  A claimant must show that he has a physical or mental impairment of

14   such severity that he is not only unable to do her previous work, but cannot, considering his age,

15   education, and work experience, engage in any other kind of substantial gainful work which

16   exists in the national economy.  *Quang Van Han v. Bowen*, 882 F.2d 1453, 1456 (9th Cir. 1989).

17   The burden is on the claimant to establish disability.  *Terry v. Sullivan*, 903 F.2d 1273, 1275 (9th

18   Cir. 1990).

19        In an effort to achieve uniformity of decisions, the Commissioner has promulgated

20   regulations which contain, inter alia, a five-step sequential disability evaluation process.  20

21   C.F.R. §§ 404.1520 (a)-(f), 416.920 (a)-(f) (1994).[3]  Here, the ALJ determined that Plaintiff (1)

22   had not engaged in substantial gainful activity since the alleged onset of disability;(2) has an

23   impairment or a combination of impairments that is considered "severe" (hernia problems, status

24   post repair, probably from nerve damage, and injury to his shoulders) based on the requirements

25   in the Regulations (20 CFR §§ 416.920(b)); (3) does not have an impairment or combination of

26   impairments which meets or equals one of the impairments set forth in Appendix 1, Subpart P,

27

28

       [3]All references are to the 2002 version of the Code of Federal Regulations unless otherwise noted.

1   Regulations No. 4; (4) cannot perform his past relevant work; but (5) retains the RFC to perform
2   a significant range of medium work.  AR 17-18.

3       Plaintiff contends that the ALJ (1) erred in analyzing the physicians' opinions; (2) did not
4   properly analyze his shoulder impairments; and (3) did not properly assess his complaints of
5   pain.

6                               **DISCUSSION**

7   A.    <u>Analysis of Medical Opinions</u>

8       Plaintiff faults the ALJ for rejecting the opinions of Dr. Alvarez in favor of those of Dr.
9   Hassan, the consultive examiner, and Dr. Bugg, the State Agency physician.  In making his
10  argument, Plaintiff contends that Dr. Alvarez' February 28, 2006, assessment, which was
11  submitted to the Appeals Council, negates the reasons proffered by the ALJ for rejecting his prior
12  opinions.

13      The opinions of treating doctors should be given more weight than the opinions of
14  doctors who do not treat the claimant.  *Reddick v. Chater*, 157 F.3d 715, 725 (9th Cir.1998);
15  *Lester v. Chater*, 81 F.3d 821, 830 (9th Cir.1995).  Where the treating doctor's opinion is not
16  contradicted by another doctor, it may be rejected only for "clear and convincing" reasons
17  supported by substantial evidence in the record.  *Lester*, 81 F.3d at 830.  Even if the treating
18  doctor's opinion is contradicted by another doctor, the ALJ may not reject this opinion without
19  providing "specific and legitimate reasons" supported by substantial evidence in the record.  *Id.*
20  (quoting *Murray v. Heckler*, 722 F.2d 499, 502 (9th Cir.1983)).  This can be done by setting out
21  a detailed and thorough summary of the facts and conflicting clinical evidence, stating his
22  interpretation thereof, and making findings.  *Magallanes  v. Bowen*, 881 F.2d 747, 751 (9th
23  Cir.1989).  The ALJ must do more than offer his conclusions.  He must set forth his own
24  interpretations and explain why they, rather than the doctors', are correct.  *Embrey v. Bowen*, 849
25  F.2d 418, 421-22 (9th Cir.1988).

26      In *Orn v. Astrue,*495 F.3d 625 (9th Cir. 2007), the Ninth Circuit reiterated and expounded
27  upon its position regarding the ALJ's acceptance of the opinion an examining physician over that
28  of a treating physician.  "When an examining physician relies on the same clinical findings as a

treating physician, but differs only in his or her conclusions, the conclusions of the examining

physician are not "'substantial evidence.'"  *Orn,* 495 F.3d at 632; *Murray*, 722 F.2d at 501-502.

"By contrast, when an examining physician provides 'independent clinical findings that differ

from the findings of the treating physician' such findings are 'substantial evidence.'"  *Orn*, 496

F.3d at 632; *Miller v. Heckler*, 770 F.2d 845, 849 (9th Cir.1985).  Independent clinical findings

can be either (1) diagnoses that differ from those offered by another physician and that are

supported by substantial evidence, *see Allen v. Heckler*, 749 F.2d 577, 579 (9th Cir.1985), or (2)

findings based on objective medical tests that the treating physician has not herself considered,

*see Andrews*, 53 F.3d at 1041.

If a treating physician's opinion is not giving controlling weight because it is not well

supported or because it is inconsistent with other substantial evidence in the record, the ALJ is

instructed by Section 404.1527(d)(2) to consider the factors listed in Section 404.1527(d)(2)-(6)

in determining what weight to accord the opinion of the treating physician.  Those factors include

the "[l]ength of the treatment relationship and the frequency of examination" by the treating

physician; and the "nature and extent of the treatment relationship" between the patient and the

treating physician.  20 C.F.R. 404.1527(d)(2)(i)-(ii).  Other factors include the supportablility of

the opinion, consistency with the record as a whole, the specialization of the physician, and the

extent to which the physician is familiar with disability programs and evidentiary requirements.

20 C.F.R. § 404.1527(d)(3)-(6).  Even when contradicted by an opinion of an examining

physician that constitutes substantial evidence, the treating physician's opinion is "still entitled to

deference."  SSR 96-2p; *Orn*, 495 F.3d at 632-633.  "In many cases, a treating source's medical

opinion will be entitled to the greatest weight and should be adopted, even if it does not meet the

test for controlling weight."  SSR 96-2p; *Orn*, 495 F.3d at 633.

In formulating his RFC, the ALJ relied on the opinions of Dr. Hassan and Dr. Bugg.  AR

15.  The ALJ reviewed the submitted medical evidence, including numerous assessments and

letters written by Dr. Alvarez in which he opined that Plaintiff was totally disabled.  As to the

December 2004, assessment, the ALJ did not give the opinion controlling weight because Dr.

Alvarez provided no specific restrictions.  AR 13.  Similarly, the ALJ noted that the June 2005,

assessment again failed to provide specific restrictions.  AR 14.  While Dr. Alvarez believed that Plaintiff was disabled, his opinions were not supported by informative treatment records.  An ALJ may discredit treating physicians' opinions that are conclusory, brief, and unsupported by the record as a whole, or by objective medical findings.  *Batson v. Comm'r Soc'y Sec.*, 359 F.3d 1190, 1195 (9th Cir. 2004).  Moreover, Dr. Alvarez' opinion that Plaintiff was totally disabled was not a medical opinion and therefore was not entitled to controlling weight.  "Although a treating physician's opinion is generally afforded the greatest weight in disability cases, it is not binding on an ALJ with respect to the existence of an impairment or the ultimate determination of disability."  *Id.*

Additionally, although Plaintiff contends that the sole reason the ALJ rejected Dr. Alvarez' opinion of disability was because he failed to provide specific restrictions, the ALJ also explained that Dr. Alvarez' opinion of total disability was contradicted by Dr. Hassan.  He explained, "the consulting examiner, who evaluated the claimant in February 2005, noted an essentially normal physical examination."  AR 15.  Indeed, as the ALJ noted, Dr. Hassan's examination was essentially normal.  Dr. Hassan's functional assessment was based on independent clinical findings that differed from those of Dr. Alvarez, whose treatment notes were mainly recitations of Plaintiff's subjective complaints, and therefore serves as substantial evidence.[4]  *Orn*, 495 F.3d at 632.

Plaintiff also faults the ALJ for not explaining what weight he gave to Dr. Alvarez' opinion even though he did not give it controlling weight.  It is obvious from the ALJ's findings, though, that the ALJ did not give Dr. Alvarez' opinions of total disability *any* weight since he found that Plaintiff was capable of medium work.  As discussed above, the ALJ gave "specific and legitimate" reasons supported substantial evidence for rejecting Dr. Alvarez' opinions.

Plaintiff also suggests that the ALJ's RFC assessment fails because "none of the opinions relied on by the ALJ assessed Plaintiff's rotator cuff injuries and limitations, and therefore, the effect of these injuries and limitations is not part of the ALJ's conclusion."  Contrary to

---

[4]  Plaintiff's argument that Dr. Hassan's assessment is "unreliable" because it does not indicate what treatment records he reviewed, is without merit.  Opening Brief, at 8.

1   Plaintiff's belief, though, Dr. Hassan performed a complete examination.  During the February

2   2005, examination, Plaintiff made no mention of any shoulder injuries.  Range of motion in his

3   neck was within normal limits, as was range of motion in both shoulders, elbows and wrists.

4   Range of motion was also normal in his hips, knees and ankles.  Strength was 5/5 in all

5   extremities and sensory was intact.  AR 147.  Although the MRI that revealed the torn rotator

6   cuffs was not performed until August 2005, Plaintiff reported that his injury occurred in

7   November 2004, and that he had been in pain ever since.  AR 160.  As the ALJ inferred, this

8   makes it likely that any pain and range of motion problems would have been evidenced during

9   the February 2005 examination.  AR 15.  *See Sample v. Schweiker*, 694 F.2d 639, 642 (9th Cir.

10  1982) (an ALJ is entitled to draw inferences logically flowing from the evidence).

11        The ALJ also reviewed the August 2005 MRI and noted that it confirmed bilateral rotator

12  cuff tears and impingement.  AR 15.  He further noted that although Dr. Gaur recommended

13  manipulation under anesthesia followed by aggressive physical therapy in September 2005, there

14  is no record that Plaintiff underwent any procedures, nor did Plaintiff testify that there was

15  further treatment.  Dr. Gaur did not set forth any limitations, but as the ALJ correctly found, this

16  did not mean that Plaintiff's shoulder impairments were not limiting.  Based on the August 2005,

17  MRI findings, the ALJ concluded that it was "reasonable to assume that the claimant's ability to

18  perform overhead work is limited" and precluded Plaintiff from any overhead work.  AR 15, 17.[5]

19  Therefore, contrary to Plaintiff's contention, the ALJ reviewed the evidence pertaining to his

20  shoulder impairments and included an appropriate restriction.

21        Finally, Plaintiff argues that this Court should consider Dr. Alvarez' February 28, 2006,

22  assessment that was requested after the ALJ's decision and presented to the Appeals Council.

23  Pursuant to *Ramirez v. Shalala*, 8 F.3d 1449, 1452 (9th Cir. 1993), this Court must consider

24  evidence added to the record by the Appeals Council even where that evidence was not before

25  the ALJ.  However, his argument is based on his incorrect assumption that the sole basis of the

26  ALJ's rejection of Dr. Alvarez' opinion was because it did not provide specific restrictions.  As

27  _____

28      [5] Although the body of the decision includes a preclusion from "overhead lifting," the findings portion
    refers to a preclusion "from any overhead work."  AR 16-17.  The hypothetical question posed to the VE and
    ultimately adopted by the ALJ included the limitation of "no overhead work with the upper extremities."  AR 200.

1  explained above, the ALJ also cited Dr. Hassan's contrary findings in support of his decision to

2  reject Dr. Alvarez' opinion.  Therefore, Plaintiff's contention that the Appeals Council, "denied a

3  remand or review of the case despite having in its possession a document from plaintiff's treating

4  physician which sets forth the 'specific restrictions' deemed missing by the ALJ, and thereby

5  satisfying the sole reason offered by the ALJ for not giving the treating physician opinion

6  controlling weight," is without merit.

7          Additionally, opinions issued *after* an ALJ's adverse determination are less persuasive.

8  *Macri v. Chater*, 93 F.3d 540, 544 (9th Cir.); *Weetman v. Sullivan*, 877 F.2d 20, 23 (9th Cir.

9  1989) (new medical report following adverse administrative decision denying benefits carries

10  little, if any, weight).  Nonetheless, the Appeals Council reviewed Dr. Alvarez' assessment and

11  explained that "there are no medical findings submitted by the treating physician or contained in

12  the medical record that would support any greater limitations" than those found by the ALJ.

13  AR 5.

14          Accordingly, the Court finds that the ALJ's analysis of the medical evidence is supported

15  by substantial evidence and is free of legal error.

16  B.      Plaintiff's Shoulder Impairment

17          In a similar argument, Plaintiff contends that the ALJ failed to completely assess and

18  properly evaluate his shoulder impairments.  Plaintiff believes that the evidence supported much

19  greater limitations that those found by the ALJ.  In support of his argument, he cites the August

20  15, 2005, MRI, Dr. Guar's treatment record and Dr. Alvarez' February 28, 2006, assessment.

21          RFC is an assessment of an individual's ability to do sustained work-related physical and

22  mental activities in a work setting on a regular and continuing basis of 8 hours a day, for 5 days a

23  week, or equivalent work schedule.  SSR 96-8p.  The RFC assessment must be based on all of

24  the relevant evidence in the record, including the effects of symptoms that are reasonably

25  attributed to a medically determinable impairment.  SSR 96-8p.  In addition, the adjudicator

26  "must consider limitations and restrictions imposed by all of an individual's impairments, even

27  those that are not 'severe,'" because such limitations may be outcome determinative when

28

considered in conjunction with limitations or restrictions resulting from other impairments.  SSR 96-8p.

Again, the ALJ reviewed the August 2005 MRI and Dr. Guar's treatment record and recommendation.  He noted Plaintiff's confirmed bilateral rotator cuff tears and impingement. AR 15.  He further noted that when Plaintiff was seen by Dr. Hassan in February 2005, Plaintiff did not report any shoulder complaints and had normal range of motion of both upper extremities.  AR 15.  Dr. Hassan therefore did not assign any shoulder limitations.  The ALJ also explained that despite Dr. Guar's recommendations in September 2005, there were no records indicating that Plaintiff had received further treatment.  Giving Plaintiff the benefit of the doubt, though, the ALJ stated, "it is reasonable to assume that the claimant's ability to perform overhead work is limited."  AR 15.  The RFC therefore included a preclusion from any overhead work. AR 17.

The ALJ therefore accommodated Plaintiff's shoulder impairment and his testimony that he could lift 25 pounds frequently and that he cannot reach overhead.  AR 191, 194-195.

C.    Plaintiff's Credibility

Finally, Plaintiff argues that the ALJ failed to properly assess his credibility.  In so arguing, he contends that the ALJ did not make clear "to what degree" his pain allegations are credible and that the reasons offered by the ALJ are not necessarily inconsistent with excess pain.

The ALJ is required to make specific findings assessing the credibility of plaintiff's subjective complaints.  *Cequerra v. Secretary of HHS*, 933 F.2d 735 (9th Cir. 1991).  "An ALJ is not 'required to believe every allegation of disabling pain' or other non-exertional impairment," *Orn v. Astrue*, 495 F.3d 625, 635 (9th Cir. 2007) (citation omitted).  In rejecting the complainant's testimony, "the ALJ must identify what testimony is not credible and what evidence undermines the claimant's complaints."  *Lester v. Chater,* 81 F.3d 821, 834 (9th Cir. 1996) (quoting *Varney v. Secretary of Health and Human Services,* 846 F.2d 581, 584 (9th Cir. 1988)).  Pursuant to Ninth Circuit law, if the ALJ finds that the claimant's testimony as to the severity of her pain and impairments is unreliable, the ALJ must make a credibility determination

1   with findings sufficiently specific to permit the court to conclude that the ALJ did not arbitrarily

2   discredit claimant's testimony.  *Thomas v. Barnhart,* 278 F.3d 947, 958 (9th Cir. 2002).

3        "The ALJ may consider at least the following factors when weighing the claimant's

4   credibility: '[claimant's] reputation for truthfulness, inconsistencies either in [claimant's]

5   testimony or between [her] testimony and [her] conduct, [claimant's] daily activities, [her] work

6   record, and testimony from physicians and third parties concerning the nature, severity, and effect

7   of the symptoms of which [claimant] complains." *Id.* (citing *Light v. Soc. Sec. Admin.,* 119 F.3d

8   789, 792 (9th Cir. 1997).  "If the ALJ's credibility finding is supported by substantial evidence in

9   the record, we may not engage in second-guessing." *Id.*

10       Here, the ALJ first explained that despite his allegations of chronic pain, Plaintiff "is not

11  receiving treatment consistent with a chronic pain syndrome, such as attendance at a pain

12  management clinic." AR 15.  Plaintiff reported to Dr. Hassan that Vicodin helps his pain.  AR

13  143.  Dr. Hassan also noted that Plaintiff does not use an assistive device while walking.  AR

14  143.  These factors, considered together, suggest that Plaintiff's pain is not as severe as alleged.

15  *See eg., Morgan v. Comm. Soc. Sec'y,* 169 F.3d 595, 599 (9th Cir. 1999) (ALJ's finding that

16  symptoms improved with medication was valid consideration in assessing claimant's credibility).

17       The ALJ also examined Plaintiff's daily activities, which included taking care of his

18  lawn, moving the lawn, caring for her personal needs, driving, visiting with friends, attending

19  church occasionally and doing some household chores. AR 15.  Plaintiff contends that these

20  reasons are not consistent with the absence of excess pain, "especially considering the plaintiff

21  has documented nerve damage." Opening Brief, at 13.  He further contends that he testified that

22  he needs assistance to put his socks on, that his son helps him with yard work, that he does minor

23  things around the house, and that he only drives short distances.  Indeed, Plaintiff testified that he

24  does not drive everyday or for long distances because of cramps in his right groin area.  AR 184.

25  Although his wife helps him put his socks on, "once he walks around and loosens up, he

26  functions "okay."  His wife tells him that he's in charge of the "outside," and he cuts the grass

27  with the help of his son.  AR 185.

28

1    Plaintiff's testimony about his daily activities was admittedly equivocal, but the ALJ was

2 entitled to examine the record and resolve the conflicts therein.  Questions of credibility and

3 resolutions of conflicts in the testimony are functions solely of the ALJ.  *Greger v. Barnhart*, 464

4 F.3d 968, 972 (9th Cir. 2006).  The courts do not have the responsibility for weighing the

5 evidence and resolving conflicts therein, that responsibility belongs to the Commissioner alone.

6 *Richardson v.  Perales*, 402 U.S. 389, 399 (1971).  In any event, the Court must uphold the

7 ALJ's decision were the evidence is susceptible to more than one rational interpretation.

8 *Magallanes v. Bowen*, 881 F.2d 747, 750 (9th Cir. 1989).  Here, the ALJ set forth findings

9 sufficiently specific to permit the Court to conclude that he did not arbitrarily discredit Plaintiff's

10 testimony.  *Thomas v. Barnhart,* 278 F.3d 947, 958 (9th Cir. 2002).

11                                    **RECOMMENDATION**

12    Based on the foregoing, the Court finds that the ALJ's decision is supported by

13 substantial evidence in the record as a whole and is based on proper legal standards.

14 Accordingly, the Court RECOMMENDS that Plaintiff's appeal from the administrative decision

15 of the Commissioner of Social Security be DENIED and that JUDGMENT be entered for

16 Defendant Jo Anne B. Barnhart and against Plaintiff Rudy B. Duarte.

17    These findings and recommendations will be submitted to the Honorable Anthony W.

18 Ishii, pursuant to the provisions of Title 28 U.S.C. § 636(b)(l).  Within fifteen (15) days after

19 being served with these findings and recommendations, the parties may file written objections

20 with the court.  The document should be captioned "Objections to Magistrate Judge's Findings

21 and Recommendations."  The parties are advised that failure to file objections within the

22 specified time may waive the right to appeal the District Court's order.  Martinez v. Ylst, 951

23 F.2d 1153 (9th Cir. 1991).

24    IT IS SO ORDERED.

25 **Dated:    October 2, 2007                        /s/ Dennis L. Beck**
                                                UNITED STATES MAGISTRATE JUDGE
26

27

28